Loring, J.,
dissenting:
At the original trial of this case the petitioner alleged and made oath in his petition that 77 bales of his cotton were taken by the United States at Atlanta, and to support his allegations he adduced witnesses who testified that the cotton was delivered to the United States at Atlanta, and transported thence by the railroad to Chattanooga, and this testimony fixed the time of the delivery and transportation to be after Captain Hade had finally left Atlanta. This was the case proffered by the claimant.
On the motion for a new trial the United States offered evidence to prove, and which I think did prove prima facie, that after Captain Hade finally left Atlanta no cotton was delivered there to the United States, and transportation by the railroad to Chattanooga was impracticable. These facts, if proved, would of themselves have established that the judgment was procured by false testimony, however unimpeached that was at the trial, and however numerous the witnesses; and I think that the United States were entitled to an opportunity to prove the facts they alleged, and that their motion for a new trial should have been granted.
The petitioner objected that this evidence could, by reasonable diligence, have been produced at the original trial, and that therefore the defendants, by the laches of their officers, were precluded from its use on this motion.
In this I do not concur. I think it lies in no man’s mouth to say that it was laches to believe him and his witnesses under *327 oatb. And laches in every ease are to be referred to its circumstances. In litigation between individuals each knows tbe facts of his case, and has that certain means of detecting false allegations, and can give them to bis counsel. But tbe United States can have no personal knowledge of facts, and can communicate none to tbeir counsel. And if a claimant here swears to bis petition, and adduce.s in support of it a mass of testimony direct and positive in its character, and which purports to be from personal knowledge, and is thus calculated to induce belief, and turn counsel to other grounds of defense, I think it is not laches in them if they forbear to impute perjury to a petitioner and bis witnesses, and fail to detect a conspiracy in a secret fraud. The law does not require that parties should be astute, but only that they should be diligent, and therefore where an elaborate deceit is practiced tbe laches that will forfeit its remedy must be after tbe deceit is discovered. And in this case the allegation was of such elaborate deceit, and tbe objection to the admission of tbe evidence was, that tbe alleged deceit was not sooner discovered — not that it bad been slept upon after it had been discovered; and I think tbe objection insufficient on tbe rules of tbe common law and tbeir reasons.
But tbe case here is not under tbe common law, but under a statute whose purpose is to defeat judgments procured by tbe fraud of judgment creditors; and which are, from tbeir fraud, legally and absolutely void. It is legislation for tbe protection of tbe public against criminals whose rights are those of perjury, and whose property, in tbeir judgments, is that of theft.
And if tbe provisions of the statute are extraordinary and exceptional, so is tbe mischief against which it provides. In litigation here the United States do not and cannot commit frauds against petitioners, while petitioners can and do commit frauds against tbe United States. They therefore are exposed to a peril to which petitioners are not exposed, and this inequality of peril authorizes inequality of protection; and of this no one can complain but tbe criminals, and the only cause of complaint they can have is that they are prevented from reaping the fruits of tbeir frauds.
Tbe statute for its purpose of public protection creates a special subject of jurisdiction here as far removed from our general jurisdiction as if it bad been vested in another court, for it includes not only judgments final here, but those removed *328 from our jurisdiction by appeal to tbe Supreme Court, and pending there, or finally acted on there; and it authorizes us to stay the payments of such judgments, and direct new trials here.
It is manifest that neither these subjects of jurisdiction, nor the power conferred for our action on them, belong to our general jurisdiction, or are within its compass; and it is also manifest that the statute attaches, and did attach, in this case after all the litigation here had been fulfilled, to which the United States submitted themselves under our general jurisdiction, and after that was functus officio.
The special authority conferred by this statute made, therefore, no part of our general jurisdiction, and they are as wide apart as crime and contract, which are their respective subjects. Under our general jurisdiction the United States submit themselves to litigation here on contracts and debts; but they do not so submit themselves as to frauds against the public and upon the public Treasury. As to these they are free as sovereign to make what provision the public security may require; and they are bound to do so, for as so veri gn they can no more abandon the public protection than an individual can hold office without official duty and responsibility; and the United States, as sovereign, used their power to protect the public against frauds in the statutes, by which they submitted themselves to our general jurisdiction, for by the 11th section of the act of March 3,1863, they, for fraud in the petitioner, determine the litigation oh his claim, and forfeit that, whether due in part or in whole. This certainly is not a power incident to the status of defendant anywhere, but is the action of sovereign authority in its proper sphere; and the statute of 1868 is only the complement of the provision in the eleventh section of the act of 1863, extending it for the protection of the public so as to reach cases of fraud not only before, but after, their final judgment here, or in the Supreme Court; and neither the eleventh section nor this statute are defenses against a debt; but they seek to prevent and punish frauds j for whether the debt is due in part or in whole, if fraud is shown, the case is within the section and statute, because of the fraud. The issue, therefore, and the only issue here, is fraud; and to say that it might have been proved before does not disprove the fraud, or tend *329 to, and therefore is irrelevant and immaterial, and no answer on this motion.
In courts of common law, actions for debt and prosecutions for fraud and their penalties are distinct proeéedings, the one of civil and the other of criminal jurisdiction. They are just as distinct here, for the staying of the judgment and the new trial of the claim on which it was recovered are but the form of trying the fraud alleged, and inflicting its penalty of forfeiture. And if in a court of common law a plaintiff had recovered a judgment on a note he had forged, could he, when prosecuted for the forgery, object that it might have been proved in his action for the -debt 1 Tet that defense, at the common law, would be analogous to that made here.
The statutes have put into the hands of the Attorney-G-eneral two means of defending the public against frauds and inflicting their penalties on their perpetrators — one, the eleventh section of the act of 1863; another, this statute of 1868 — and I know of no rule of law and no reason which prevents the Attorney-General from using his discretion as- to which he will use in the performance of his official duty. Many cases are conceivable in which such a discretion would be expedient, as, for example, in a class of fraudulent cases it might be expedient to go through the trial of one to elicit circumstances and testimony which may lead to the detection of the fraud common to the class, and to suppress all suggestions of that till its proof was ripe. And the perpetrator of a fraud has no right or equity on which he can complain that his fraud was not proved under the eleventh section of the act of 1863 instead of the statute of 1868; and if that, in any case, should be an omission of official duty in the Attorney-General, that is a matter between him and the Government only.
In courts of common law, the only purpose of a new trial of an action for debt is to put iu issue the indebtedness which was put in issue before, and as to which issue the party moving for the new trial had had his day in court. And that makes the reason of the rule urged here for the petitioner. But a new trial under the statute has reference not to the indebtedness put in issue before, but to .a fraud practiced in its recovery. And the purpose of the statute is to put in issue that fraud, which was never ptit in issue before; and to punish it by the forfeiture of the claim proved to be due. And, therefore, the *330 rules of courts of common law, as to new trials, have no applicability under this statute, except where the fraud alleged has been put in issue before. And that is not the case here.
It was argued at the bar that, by the ninth section of the act of 1855, establishing this court, new trials here were to be governed by the rules of the common law and chancery.
But the ninth section of the act of 1855 is, by its express terms, confined to a class of cases which it specifies and minutely describes, viz, decisions adverse to the petitioner, and reported to Congress and confirmed there. And'these circumstances are the reasons of the provision for the class specified and described, and therefore the section could not include other cases if it were in force now. But it is a provision for cases reported to Congress, and those only; and the act of 3d March, 1863, reconstructing this court, abolished reports to Congress, and gave, instead of them, appeals to the Supreme Court, and its repealing section expressly repeals all provisions inconsistent with its own. It necessarily, therefore, repealed the ninth section, providing only for cases reported to Congress.
And the ninth section of the act of 1855, and the statute of 25th June, 1868, are not in pari materia; for the ninth section relates exclusively to decisions adverse to the petitioner, and on contracts and debts, and it does not relate to frauds at all; neither does the act of 1855; while the statute of 1868 relates exclusively to decisions adverse to the United States, and procured by fraud, wrong, or injustice, so that their subjects are as different as contract and crime, and they refer to different parties in litigation.
It was claimed at the bar that this statute referred to the rules of the common-law courts as to new trials, in its provision for the admission of cumulative evidence, and that this express exclusion of one rule of the common-law courts was the tacit adoption of the others.
But the argument rests on the misuse of the rule it refers to. The rule referred to is 11 expressio unites est exelusio alterius.” But the argument used its converse, for which it is no authority; for though the express’ adoption of one rule is the exclusion of others, it by no means follows that the express exclusion of one rule is the adoption of others which would counteract the effect of the exclusion. And here the express provision as to cumulative evidence is to extend the operation *331 of tlie statute and increase its efficiency; and that can furnisb no inference for tbe adoption of rules which would restrict the operations of the statute and reduce its efficiency.
It was contended at the bar that, by the general rules of construction, the statute is to be construed according to the rules of the common law, and that it. was a rule of the common law that a new trial should not be granted on evidence that might by reasonable diligence have been adduced at the trial.
It is certainly true that the statute is to be construed by the rules of the common law, for the rules of the common law are the formula of its principles, which are the basis of our system of laws. But the rule under which it is claimed the evidence should be excluded is not a rule of the common law. It is merely a rule of practice of the courts of common law, and statutes are never construed by these, because they have not the fixedness or authority of the rules of common law. They have not their fixedness, for they vary in different courts of different jurisdictions and iu different courts of the like jurisdiction. Thus the rules of practice which prevail in England relative to new trials of issues out of chancery are held not to be applicable to the circuit courts of the United States where the same judges that direct, superintend the trial of such issues. (4 Wash. C. O., 32.) So in equity new trials are granted on issues .directed to try the soil, though the judge who tried the issue certifies in favor of the verdict, because in equity it requires two verdicts in the same way to bind the inheritance, while in courts of common law one verdict is enough. So a new trial is granted if the judge who tried the issue was dissatisfied with the verdict, while in the common-law courts there is no similar rule. And in the courts of common law in England the rule formerly was that new trials were not granted where there was evidence on both sides, (Buller’s N. P., vol.' 6, p. 325,) while their modern rule is that new trials will be granted if the rule*is against the weight .of evidence and the judge is dissatisfied with the verdict. (13 Bingh. N. C., 109; 3 Scott, 513.) And in our State courts and in some of the circuit courts of the United States the rule formerly was that new trials should be granted if the verdict was against the weight of evidence, (2 Or. C. Ct., 478 ; 4 ib., 206,) while in many of the State courts and in the circuit courts of the United States the modern rule is that new trials will not be granted because the *332 • verdict is against the weight of evidence where there is evidence on both sides and it is contradictory.
And the rules of practice of the courts of common law have none of the authority of rules of law, for rules of practice are made by the j udges only, and have only their authority in their own courts, and there they may abrogate or alter them or qualify them according to the circumstances of the particular case, or the changes in society and the times. The maxim for rules of practice is “ Oursus curice est lex curice,n which Mr. Broome translates thus, p. 119, “ the practice of the court is the law of the court; ” and he adds the remark made and repeated in the cases he cites that u there is a material difference between those things which are required to be done by the common law or the statute law of the land and things required to be done by the rules and practice of the court;” and he continues thus: “in a court of equity, as in a court of law, the maxim cOursus curice est lex curice7 is frequently recognized and applied. The court will, however, as remarked in several recent cases, adapt its practice and course of proceeding to the existing state of society, and not, by too. strict an adherence to forms and rules established under different circumstances, decline to administher justice and to enforce rights for which there is no other remedy.”
Thus different in fixedness and authority are the rules of .the common law and the rules of practice of the courts of the common law. And so clear is it that the authority of the latter is confined to the courts that make and may unmake them that it has come to be a maxim, Oursus curice est lex curice — “ The practice of the court is the law of the court,” and not of other courts; for that is the effect of the words, and is necessarily the case ; for one court cannot make rules of practice for another court, over which it has no judicial authority, and which is of a different jurisdiction. Yet that is what is claimed here, and much more is claimed; for it is claimed that a statute shall be controlled by a rule of practice of courts in 'which the statute is not to be executed, and that when the effect of the rule would be to restrict the operation of the statute and pervert it to the protection of the frauds it was meant to prevent, and which are specified in it. I know of no authority for such a proposition, and I think it was never made before.
And there is no similitude between a new trial in the courts *333 of common law and under this statute. A new trial in those courts is to-day what it was in the beginning; then no statute prescribed it, and it was not the right of a party who had had his day in court, but it was and is a mere application to the discretion of the court, in every stage of its proceeding. And because there was no statute making, by its purpose and provisions, its own rule for its execution, as all statutes do, the courts of common law made such rules for the exercise of their discretionary liower over the general .subject of new trials as they deemed expedient for their own practice; but their rules of practice are not ours, and they áre not obligatory or applicable here, for courts of common law have no rules for the cases for' which this statute provides; for those courts never contemplated new trials directed by a statute, and in the court where the suit originated, after it had passed from its jurisdiction by appeal and was pending in the appellate court, or had been finally acted on there.
And this court is of special jurisdiction; and the Supreme Court has expressly decided, what our own action had affirmed from the beginning, that we are not bound by the rules of pleading of the courts of common law; and if we are not bound by their rules of pleading, we cannot be bound by their rules of practice, for the two are inseparably interwoven.
But cases here are under 'a statute specifically providing for them, and that distinguishes them from all cases as to new trials, civil or criminal, in courts of common law; for new trials there are not under a statute, but subject to the discretion of the courts’, and that alone gives them their «power to make rules for new trials; and I know of no authority in any text-book, decision, or dictum, that holds or suggests that a court of common law can by its rules of practice as to new trials control a statute prescribing them. And the proposition would seem to be self-evident, that where a statute prescribes a new trial in a case it specifies, it leaves nothing to the discretion of the court, and cannot be defeated by mere rules of practice.
And this statute, by the rules of the common law belonging to the statutes, is to be construed according to the ordinary meaning of its terms; and, so construed, it leaves to us no discretion as to whether we will protect the public or protect the fraud, for that is the alternative. The implication of such a discretion is from its nature impossible, and it is precluded by *334 tbe terms of tbe statute ; for by tbe rule that where a statute directs a thing to be done for justice’s sake, 11 may” means “ shall,” this statute imperatively directs that where, u ou evidence,” we are satisfied of the fraud, we shall direct a new trial of the suit or claim.
Now, what is a new trial in its technical sense "1 Its definition in the test-books and on judicial authority is “ a re-examination, before a court and jury, of an issue in fact which has been tried at least once before,” (1 Hilliard, 1;) and this is the whole meaning of the words t( new trialand they describe a judicial proceeding, a substantive thing, entirely distinct from the different rules of practice which different courts may make for their own use; and such re-examination may be under one set of rules in one court and under another set of rules in another court of a different or like jurisdiction; or it may be, as here, under a statute which prescribes that a new trial shall be granted on a fact found, and thus makes its own rule, against which no rule of practice of any court can prevail.
Under the provisions of the statute, it is certain that where, on the hearing of a motion for a new trial, we are satisfied of the fraud, we cannot refuse a new trial, because that would be to defeat the statute. And for precisely the same reason we cannot reject any evidence which, from its legal quality, is competent and is efficient to prove the fraud. Where a statute makes it the duty of a court to find a fact a on evidence,” it makes it its duty to receive any legal evidence competent to prove the fact. In the case of The United States v. Crussel, appealed from here and decided at the present term of the Supreme Court, they said that whatever the decision of this court, might be, under a motion for a new trial under this statute, it could be reversed in the Supreme Court. And that would be a necessary consequence of the fact that under this statute we are not using a discretionary power, but performing a judicial duty prescribed by statute.
And I think this statute, like all statutes, is to be construed by the rules of the common law as contradistinguished from the rules of practice of the courts of common law ; and that these latter cannot be adopted here to remove from the statute cases which it specifies, and which otherwise would be within it. Yet that is the only possible effect of the rule claimed if this judgment is fraudulent. And it is its only possible *335 effect in any cases of.fraudulent judgments; and the statute relates to no other.
The statute is remedial and penal. It is remedial so far as its purpose is to prevent frauds, audit is penal so far as it inflicts their consequences on their perpetrators. And the rule of construction of the common law for such statutes is stated by Mr. Darwin (p. 653) as follows: “ Statutes against frauds are a satisfactory exception to the rule that penal statutes are to be taken strictly. There is no contradiction, except in terms, in holding that where the offense is to be punished by setting aside a fraudulent transaction or an instrument improperly obtained the fullest effect shall be given to the provision framed to suppress the mischief.” And he cites these words from Lord Keeper Wright: “Chancery will aid remedial laws, though they are called penal, not by making them more penal, but by letting them have their course
And I think this statute is to be let to have its course by giving to its words their full effect to .suppress the mischief, according to the rule of the common law. And I do not perceive that this encounters the objections urged against it, for the motion for a new trial must be founded on “ a fraud, wrong, or injustice,” specifically alleged, and which has not been put in issue before; and the fraud or wrong must be done by the judgment-creditor, and the injustice must be such as makes it bad faith in him to use his judgment. And a new trial can be ordered only on evidence which satisfies prima facie the mind of the court. Fraudulent judgments are in themselves void, and their frauds shock the public sense, for they are deliberate, elaborate, and involve perjury and the persistent abuse of judicial proceedings; and if the public is to be protected against these frauds, the means the statute provides would seem to be as little onerous as any efficient means could be.
The laches attributed to the officers of the Government were used in augment only as the foundation for the rule of practice claimed from the courts of common law, but the question as to such laches is to be taken in reference to the statute and this court; and then the question is whether there is any rule authoritative here by which such laches, if proved, would preclude the Government, under this statute, from proving frauds within its letter, and the mischief it was intended to prevent. For the reasons stated, I think there is not. No rule of our own *336 could bar or restrict the execution of an act of Congress; and I think we can borrow none for any such purpose.
Objections were made to the sufficiency of the affidavit on which the motion was presented. I think none was necessary. All acts done here by the Attorney-General, or under his authority, are done under the sanction of his official oath. The fraud in question was specifically alleged; and thus the respondent was informed of that to which he was to answer; and the court were enabled to judge if the allegation sustained the motion, and this was all that was of any practical use.
All process, civil or criminal, may be perverted to means of prosecution. But that is not to be anticipated here; and I think the purpose of it has not been indicated.
For the reasons I have stated in this case of John Silvey, I think the motion for a new trial should have been granted in case of The United States v. Edward Laplante.